Earl, J.
(dissenting).—This is a proceeding by the People’s Rapid Transit Company, under the general railroad act of 1850, to acquire the land in the city of Mew York, of Bowie Dash, for the purposes of its railroad. The petition of the company contains all the facts and allegations required by the act, and there is no denial of any of them. It shows that the company was organized under the general railroad act to build and operate a road from Tarrvtown, in Westchester county, to and into the city of Mew York, about thirty miles long; that its purpose is to construct and operate “ a railroad of the greatest carrying capacity, to be operated by steam power, upon lands to be purchased or acquired under the provisions of said act of 1850, upon which express trains of the largest passenger capacity may be run at an average speed of fifty miles an hour, which road may be maintained and operated without any injury to any interest of the public or of the city of Mew York, and which will withdraw from the ordinary uses of commerce and business the minimum of space and area on the surface of the ground; that such a railroad requires that the curvature of its lines should in no instance exceed five degrees, and that the grade should not exceed one-half of one per cent; that said railroad will pass above all the streets and highways •within the city at an elevation which will not limit, restrict or in anywise interfere with their present or prospective public use, and as nearly at right angles with such streets as the required curvature of the lines will admit; that in the few instances, all of which are north of One Hundred and Twenty-fifth street, where the contour of the surface will not admit of the passage above the street, the tracks will be laid below the street at such a *603 depth as will leave the 'entire space required for sewers, gas mains, conductors and all other present or prospective city public uses wholly undisturbed, and will not in any respect limit, restrict or interfere with such public use; that the line or route so located is not, nor is the railroad or any part of it, within the limits of the city of New York intended to be ‘in, upon or along’ any or either of the streets, avenues or highways of said city, nor is the same or any part of it, in fact or intended to be, either ‘ a street railroad ’ or a railroad or railway ‘ over, upon, under or through ’ any or either of the streets, roads, avenues, parks or public places in said-city.” The affidavits which accompany the petition show that the company proposes to carry its road, except where it is built under ground, upon high brick arches through the city blocks and over the streets upon high steel bridges.
It is entirely clear that the proposed road is not a street railway nor wholly a surface railway. It is in part an elevated railroad, in part an underground railroad, and in part a surface railroad.
It is contended, on behalf of the land-owner, that a company to construct and operate such a road cannot be'organized under the general railroad act. That act was not confined in its operation to any particular kind of road. It is very broad and comprehensive in its provisions. Under it, standing alone, any kind of road, surface, elevated, underground or street, for the conveyance of passengers and property, can be constructed, and the act contains no limitation as to the motive power to be used. Matter of the W. S. A. & P. R. R. Co., 115 N. Y., 442 ; 26 N. Y. State Rep., 504. It is not only broad and comprehensive, but also exceedingly liberal. Any number of persons, not less than twenty-five, without any further sanction or authority than that found in the act, can form a corporation to build a railroad anywhere in the state, to be operated in a city or in the country, and they are made the sole judges of the necessity, feasibility and public utility of the road ; and a corporation when thus formed possesses a portion of the sovereign power of the state in its capacity to take by condemnation proceedings the lands of individual owners for its corporate purposes. Among the powers conferred upon such a corporation is one found in § 28 of the act, authorizing it to construct its road “ across, along or upon any stream of water, watercourse, street, highway, plank-road, turnpike, or across any of the canals of this state which the route of its road shall intersect or touch; ” but it is not authorized to construct its road “ in, upon or across any street in any city without the assent of the corporation of such city,” nor “ upon and along any highway without the order of the supreme court.”
Therefore, under the general railroad act, unless its power is curtailed or in some way limited by some subsequent act, this company, with the assent of the municipal corporation, can build its road into the city, crossing any of the streets in its route.
The principal contention, however, on the part of the land owner is that the authority given by the general railroad act to construct railroads across streets in the city of New York, with *604 the assent of the city corporation, is taken away by the act, chapter 10, of the Laws of 1860 ; and so it was held in the court below.
That act provides that “ it shall not be lawful hereafter to lay, construct or operate any railroad in, upon or along any or either of the streets or avenues of the city of Hew York, wherever such railroad may commence or end, except under the authority and subject to the regulations and restrictions which the legislature may hereafter grant and provideand it repeals all other acts and parts of acts inconsistent therewith. The question turns upon the scope and meaning of the words, “in, upon or along,” the counsel for the land owner contending that they embrace the crossing of a street, while the counsel for the company contends that they only refer to railroads built along and through a street, and we are of that opinion. Such is their natural and ordinary import. According to general usage and the common .understanding of business men, a railroad simply crossing a street would not be considered to be constructed “ in, upon or along ” a street.
The act of 1860 was manifestly intended substantially as an amendment of the act, chapter 140 of the Laws of 1854. Prior to the latter act there had been no legislation to protect abutting owners against the intrusion of railroads into city streets, except as the construction of such roads was made subject to the assent of the municipalities. It had been found by experience that the municipalities could not be relied upon to give such protection, and hence it was provided in the act that the “common councils of the several cities of this state shall not hereafter permit to be constructed in either of the streets or avenues of said city a railroad for the transportation of passengers, which commences and ends in said city, without the consent thereto of a majority in interest of the owners of property upon the streets in which said railroad is to be constructed being first had ánd obtained.”
The act, by its terms, was confined in its operation exclusively to railroads commencing and ending in the city. Proceedings in the courts of this state, and the history of the times, show that the power conferred upon the common council in the city of Hew York was improvidently and unwisely exercised, and that the act was easily evaded by commencing a railroad outside the city, and bringing it into the city; and so the act of 1860 was passed to, remedy these evils. Both acts obviously dealt with street railroads, as no others were then in contemplation.
That the meaning we have attached to the words “in, upon or along,” in the act of 1860, is the legislative sense of them,' is made quite apparent by a reference to many legislative acts, authorizing and regulating the construction of railroads in this state. - It is believed that these words have never been used in any act so as to embrace the crossing of a street, but that one of the appropriate words “across,” “cross,” or “intersect,” has always been used in all legislation as to the crossing of streets by railroads.
In the act, chap. 263 of the Laws of 1831, to incorporate the Hew York & Harlem Railroad Company, it is provided in § 10 that, in case of locating the route of its road “ in or along ’ *605 any public street of the city of New York, it should leave «sufficient space in the street on each side of the railroad for a public highway; and in § 11 it is provided that whenever it shall be necessary for the construction of the road to “ intersect or cross ” any stream of water, water-course or any road, street or highway, it shall be lawful for the corporation, with the consent of the city, to construct its road “ across or upon ” the same, provided that it shall restore the stream or watercourse or road, street or highway thus “ intersected ” to its former state, or in a sufficient manner not to have impaired its usefulness. By the act, chap. 300 of the Laws of 1835, “to enlarge the powers of commissioners of highways,” it is provided that whenever any association or individual shall construct a railroad upon land purchased for that purpose on a route which shall “ cross” any public highway, it shall be lawful for the commissioners of highways to give a written consent that such railroad may be constructed “ across or on ” such highway; and thereafter such association or individual shall be authorized to construct and use such railroad “across or on” such highway; but any public highway thus “intersected or crossed” by a railroad shall be so restored to its former state as not to have impaired its usefulness. By the act, chap. 216 of the Laws of 1846, “to authorize the construction of a railroad from New York to Albany,” it is provided in § 4, that the company could locate its railroad “ on ” any of the streets of the city of New York described with the assent of the city corporation; and in § 14 it is provided that whenever it shall be necessary for the construction of its road to “intersect or cross any stream of water or water-course or any road or highway,” it shall be lawful for it to construct its road across or upon the same ; but the corporation shall restore the stream or water-course or road or highway thus intersected to its former state, etc. By the act, chap. 140 of the Laws of 1882, it is provided that it shall be lawful for any individual, company, association or private corporation to build and operate a railroad “ on or across ” any highway upon certain conditions mentioned.
By chap. 252 of the Laws of 1884, the street surface railroad act, it is provided that any company organized under the act may construct and operate a railroad on the surface of the soil, “ through, upon and along ” any of the streets; and these words plainly have reference to railroads laid in and along the streets and not crossing them, except as the street in which it is laid crosses other streets. Chapter 65 of the Laws of 1886 is an act “ to secure adequate •compensation for the right to construct, maintain, use and operate or extend street railroads in cities and villages,” and it provides that the local authorities of any incorporated city or village to whom application may be made for consent to the construction" and operation of a street railroad, “upon, under, through or across any of the streets,” etc., must provide for a sale of the right, franchise and privilege of using the streets at public auction to the highest bidder as prescribed in the act.
Later in the' same session of.the legislature it was evidently *606 perceived that it would be unjust and impracticable to require the conditions specified from a railroad merely crossing streets, and hence that act was amended by chapter 642 so as to confine its operation to railroads constructed “ over, under, upon or through” any of the streets, etc., the word “ across” being ¿rapped. There can be no doubt that the words quoted were intended to describe only railroads built along streets, and not merely crossing them.
But still more significant is the language found in subdivisions of § 28 of the general railroad act of 1850. That section first authorizes a railroad company organized under the act to construct its road “ across, along or upon” any street or highway, and “across” any of the canals of the state; and then provides that there shall be no authority for the erection of any bridge or other obstruction “across, in or over” any navigable stream; nor for the construction of any railroad “in, upon or across” any city streets without the assent of the city corporation, or “ upon and along” any highway without the order of the supreme court. Here the words last quoted clearly have reference to railroads built in and along highways, and not to such as merely cross them, and the word “ upon” does -not embrace such railroads. A railroad in a city cannot be constructed across a city street without thé assent of the city corporation, but it can be constructed across a country highway without the order of the supreme court.
It is not needful, I think, to search further through the statutes of this state for the legislative meaning of the words “ in, upon or along,” found in the act of 1860 Neither of them is used in the sense of “ across,” and if that had been intended the appropriate word found in many statutes, and evidently familiar to the legislature in all railroad legislation, would have been used. It was not the purpose of the legislature in the acts of 1854 and 1860, and it was not within the scope of those acts, to regulate the mere crossing of streets by railroads. The main purpose was the protection of abutting owners.
The interests of the city were substantially provided for in other acts. If it was the purpose by the act of 1860 to prohibit the construction of any railroad across any street as well as along any street without further legislative authority, a simple act prohibiting the construction of any railroad in the city of New York, without further legislative authority, would have been much more appropriate, as no railroad can be constructed in New York which does not cross or pass along some street.
It is further claimed, on the part of the land-owner, that the railroad proposed to be constructed is an elevated road, or both elevated and under-ground, and hence that the only authority for the construction of such a road is to be found in the act, chap. 606 of the Laws of 1875, generally known as the Rapid Transit Act But that act concerns only railroads wholly within one county or one city, and could not be made applicable to a road like this, tobe constructed in the two counties of Westchester and New York. It is not needful ndw to determine the precise scope of that act, as §40 thereof provides that the act shall not be construed to repeal, or in any manner to affect, chap. 140 of the Laws of 1850,, *607 .and. that none of its provisions shall apply to any railroad company organized under any general or special law of this state for the purpose of constructing' or operating a steam railroad upon the surface of the ground.
My conclusion, therefore, is that the learned court below fell into error, and I cannot concur with my brethren.
Order affirmed, with costs.
Ruger. Oh. J., Finch, Gray and O’Brien, J. J., concur; Andrews, J., concurs on the second ground of Judge Peckham’s opinion, and also' on the ground that the obtaining of the consent -of a municipality to the construction of a road is a condition precedent to the exercise by the company of the power of eminent domain in the taking of private property therefor. Earl, J., reads for reversal.